UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARCIE THOMAS WARRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:04-0221 |
| v. ) | |
| ) | Judge Trauger |
| DR. RAMSEY WALKER, ) | Magistrate Judge Brown |
| UNKNOWN PERSON #1, and ) | |
| UNKNOWN PERSON #2, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by defendant Dr. Ramsey Walker (Docket No. 34), to which plaintiff Marcie Thomas Warrick has responded (Docket No. 43), and the defendant has replied (Docket No. 51). For the reasons stated herein, defendant's Motion for Summary Judgment as to plaintiff's Eighth Amendment claim will be denied.

### I. Factual Background and Procedural History

The court has previously summarized the factual and procedural history of this case in the Memorandum accompanying its November 12, 2004 Order (Docket Nos. 21, 22), which is adopted herein by reference. Additional relevant background follows.

On November 12, 2004, the court entered an Order granting defendant Walker's Motion to Dismiss plaintiff's Fourth Amendment claim as unopposed and denying Walker's Motion for Summary Judgment as to plaintiff's Eighth Amendment claim. In denying the Summary

Judgment Motion, the court laid out the plaintiff's allegations as follows:

> Here, Warrick's Eighth Amendment claim is construed as alleging that Dr. Walker was deliberately indifferent to her serious medical needs in that he: (1) refused Warrick her crutches or, in the alternative, ignored the fact that other officials were regularly withholding her crutches; (2) failed to properly diagnose and promptly treat her infected ankle; and (3) prematurely terminated her physical therapy and 'retaliated against the Plaintiff by scheduling physical therapy during times of visitation with the Plaintiff's mother and daughter.'"

(Docket No. 22 p. 14 (citing Docket No. 1; Docket No. 17)) Concerning the first charge, the court found "genuine issues of material fact with respect to Dr. Walker's alleged deliberate indifference to Warrick's serious medical need for crutches." *Id*. p. 16. In the court's view, Warrick had presented sufficient evidence from which a trier of fact could conclude that Dr. Walker felt that crutches and/or a wheelchair were a necessary part of Warrick's treatment and that the denial thereof could pose a substantial risk of harm to Warrick's fractured foot and wound, that he was made aware of the fact that Warrick's crutches and/or wheelchair were being withheld by prison officials who believed that their actions were in accordance with orders from Dr. Walker, and that he disregarded the substantial risk to Warrick by failing to take reasonable steps to abate it. *Id*. pp. 16–17. For these reasons, the court concluded that "Warrick's claim that Dr. Walker exhibited deliberate indifference to her serious medical condition... by consciously disregarding the risk of substantial harm posed by the removal or withholding of her crutches will survive summary judgment." *Id*. p. 17.

The plaintiff's additional accusations of deliberate indifference, however, did not. With respect to the second charge, the court found that:

> This assertion boils down to nothing more than a claim of negligence in that Dr. Walker failed to recognized, diagnose, and treat Warrick's ankle as infected prior to March 17, 2003, and that he mistakenly concluded that she was healed on March 13, 2003. Because Warrick alleges only a difference of opinion between

2

>herself and Dr. Walker concerning her diagnosis and treatment, Warrick is not entitled to relief.

*Id*. p. 18. Summary judgment was thus granted as to plaintiff's second alleged instance of deliberate indifference, since the claim was "at best, one of negligence, which cannot rise to the level of a constitutional violation under the Eighth Amendment." *Id*. pp. 18–19.

Finally, with respect to plaintiff's third allegation of deliberate indifference, the court found that summary judgment was warranted, since "Dr. Walker's decision to terminate [Warrick's] physical therapy after her March 17, 2003 surgery, upon a medical determination that it was no longer necessary, does not demonstrate deliberate indifference to a serious medical need by any stretch of the imagination." *Id*. p. 20. Thus, pursuant to the November 12, 2004 Order, only the first charge of deliberate indifference remains.

On November 15, 2005, after consideration of the facts recited in the plaintiff's March 10, 2005 deposition, defendant requested leave to file an Amended Answer for the purpose of adding a statute of limitations defense to plaintiff's § 1983 action (Docket No. 33), to which the plaintiff did not object (Docket No. 38). Thereafter, an Order granting the Motion to Amend was entered and the Amendment filed (Docket Nos. 40, 41).

Also on November 15, 2005, defendant filed a second Motion for Summary Judgment, calling again for the dismissal of plaintiff's Eighth Amendment claim. (Docket No. 34) While the defendant "acknowledges that, viewing the evidence in a light most favorable to the Plaintiff, there may be a disputed issue of fact on deliberate indifference" (Docket No. 35 p. 3), he contends that summary judgment is nevertheless appropriate because: (1) the applicable one-year statute of limitations bars plaintiff's claim since the alleged constitutional deprivation occurred more than one year prior to plaintiff filing suit; and (2) the alleged constitutional deprivation did

3

not cause plaintiff any injury. *Id*. p. 4.

## II.     Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v.*

4

*Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

### III.     Statute of Limitations

The Supreme Court has mandated that the statue of limitations applicable to actions brought under § 1983 for civil rights or personal injury violations should be the state statute of limitations for personal injuries. *Wilson v. Garcia*, 471 U.S. 261, 380 (1985).[1] In Tennessee, the statute of limitations for actions brought under federal civil rights statutes or for personal injuries is one year. The parties agree that Tennessee law applies and that the appropriate statute of limitations is one year. They disagree, however, as to when this one-year statute of limitations should begin to run.

---

[1] The Court's later decision in *Jones v. Donnelley & Sons Co*., 541 U.S. 369, 383 (2004), which applied the federal four-year "catch-all" statute of limitations to a suit alleging racial discrimination under § 1981 in the form of hostile work environment, wrongful termination, and failure-to-transfer claims, does not apply to prisoner claims under § 1983 because, while the statute was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id*. at 382.

5

The defendant attempts to persuade the court that the statute of limitations should commence at the time that the plaintiff was allegedly deprived of a wheelchair or crutches at the hands of the defendant. Dr. Walker argues that he can be found liable only for deprivation that occurred between February 14, 2003 and February 28, 2003, because the remaining deprivations were at the hands of other CCA officers and, under § 1983, a defendant cannot be held vicariously liable for the alleged constitutional deprivations caused by others. Thus, according to the defendant, the cause of action accrued no later than February 28, 2003. Because Warrick failed to file suit until March 16, 2004, Dr. Walker contends that plaintiff's claim of deliberate indifference asserted against him should be barred as untimely.

Defendant's statute of limitations argument, however, rests on the faulty supposition that a cause of action must accrue at the time of the alleged constitutional deprivation. While the duration of the statute of limitations for actions brought under § 1983 is governed by state law, federal standards govern the issue of accrual. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). Under Sixth Circuit precedent, the statute of limitations begins to run when the plaintiff "'knows or has reason to know of the *injury* which is the basis of his action.'" *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005) (quoting *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)) (emphasis added). The Sixth Circuit has further advised that "this inquiry focuses on the harm incurred, rather than the plaintiff's knowledge of the underlying facts which gave rise to the harm." *Friedman v. Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991).

As stated above, the only charge of deliberate indifference by plaintiff that survived defendant's first Motion for Summary Judgment is that Dr. Walker allowed aggravation to plaintiff's ankle due to the withholding of her crutches and that this deprivation lead to the

6

development of an extremely infected and toxic condition, for which plaintiff had to endure a

two-month long period of recovery in the hospital.[2] Plaintiff's remaining claim, therefore, is

---

[2]Plaintiff's attempt, in response to defendant's current Motion for Summary Judgment, to further expand the scope of her deliberate indifference claim is to no avail. Plaintiff appears to argue, for the first time, that Dr. Walker was additionally deliberately indifferent in failing to take the plaintiff's vital signs, which plaintiff contends would have clearly indicated the onset of infection, and in relying on the plaintiff's sick calls or medical requests, which allegedly resulted in the delay of her treatment. (Docket No. 46 pp. 8–10) Plaintiff also maintains that "Dr. Ramsey Walker's deliberate indifference violated five separate and distinct standards of Correctional Health Care...." *Id*. pp. 8–9. While the court is mindful of the fact that defendant's initial Motion for Summary Judgment was submitted on a limited record and that the parties, since that time, have engaged in further discovery, the defendant is correct in that the plaintiff's additional claims do not raise new issues. (Docket No. 51 p. 2) These claims clearly fall into the category of claims previously dismissed by the court as claims for mere negligence. The court adopts herein and applies to these 'new' claims its previous findings, including, but not limited to, the following:

> This assertion boils down to nothing more than a claim of negligence in that Dr. Walker failed to recognize, diagnose, and treat Warrick's ankle as infected prior to March 17, 2003, and that he mistakenly concluded that she was healed on March 13, 2003.
>
> * * *
>
> Moreover, as the Sixth Circuit noted in both *Hill* and *Westlake*, "where a prisoner has received some medical attention and now disputes the adequacy of that treatment, the federal courts are reluctant to second guess prison officials' medical judgments and to constitutionalize claims which sound in state tort law." *Hill*, 211 F.3d at \*\*2 (citing *Westlake*, 537 F.2d at 860, n.5). Such is the case at hand. There is nothing in the record suggesting that Dr. Walker consciously disregarded a substantial risk to Warrick's medical needs by ignoring or deliberately declining to diagnose or treat an infection at any point in time. To the contrary, there is evidence that Dr. Walker was responsive to Warrick's medical need to remain free from infection. For example, Warrick does not appear to dispute the fact that Dr. Walker had, on a prior occasion, prescribed Warrick antibiotics to deter a possible infection. (Warrick Aff. at ¶ 10) In addition, it is undisputed that, upon hearing from Nurse Christy of Warrick's worsened condition on March 17, 2003, Dr. Walker responded by immediately ordering Warrick to the emergency room. The fact that Warrick had to endure surgery and a two-month long recovery is not relevant. *See Farmer*, 511 U.S. at 830 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). Under this set of facts, Warrick's claim is, at best, one of negligence, which cannot rise to the level of a

7

based on the infection to her foot, which she blames on the deliberate indifference of Dr. Walker. Thus, even assuming the truth of defendant's assertion that the last constitutional deprivation for which defendant can be held liable occurred on February 28, 2003, the plaintiff did not know or have reason to know of the harm or injury which forms the basis of her action until March 17, 2003, when she was transported to the emergency room and diagnosed with a foot infection. While plaintiff knew that she was being deprived of her crutches as early as February 2, 2003, she had no reason to know that she had a serious medical need for the crutches or that substantial harm and injury to her could result from this deprivation until March 17, 2003. Until this time, no event had yet occurred that would have alerted the plaintiff to protect her rights.

A factually analogous case out of the Seventh Circuit buttresses this finding. In *Weitzel v. Sheahan*, No. 97-2868, 2000 WL 222557, at * 2 (7th Cir. Feb. 18, 2000), the Court considered whether dismissal of a § 1983 deliberate indifference to serious medical needs claim, on statute of limitations grounds, was proper. *Weitzel* concerned an inmate who, despite the fact that his treating physicians had knowledge of his hip problems, had repeatedly been refused access to crutches or a wheelchair by jail officials and, thereafter, developed a chronic infection which necessitated the surgical removal of his hip. *Id*. at * 1–2. While the Court ultimately found the claim to be time-barred, it first determined that the claim accrued, not at the time that the walking devices had been withheld, but, rather, at the time of the surgery, which was when the plaintiff had reason to know "that the medical treatment he received during his incarceration contributed to the loss of his hip...." *Id*. at *2.

---

constitutional violation under the Eighth Amendment. *See Estelle*, 429 U.S. at 106; *Comstock*, 273 F.3d at 703.

In support of its contrary position, that the statute of limitations should be timed from the date of the act (here, the deprivation of crutches) that allegedly causes the injury to the plaintiff, the defendant relies on the one-page, unreported Sixth Circuit opinion in *Wells v. Jefferson County Sheriff Dep't.*, No. 01-3575, 2002 WL 745793, at * *1 (6th Cir. April 25, 2002). In *Wells*, the plaintiff brought a § 1983 claim, alleging that the defendant prison officials failed to protect him from other inmates and failed to provide adequate medical care when his nose was broken by an inmate on December 17, 1997. *Id.* at **1. In finding the plaintiff's claims barred by the applicable statute of limitations, the Court summarily concluded, without explanation, that "The complaint indicates that Well's claims regarding the defendants' alleged failure to protect him and to provide adequate medical care accrued on or before December 17, 1997. Thus, the district court properly determined that these claims were barred by the applicable statute of limitations." *Id.* Despite this effectively dispositive ruling, the Court went on to explain that the plaintiff had failed to raise a viable Eighth Amendment deliberate indifference claim because "[t]he record also shows that Wells was examined by a nurse after he was assaulted, that the nurse disagreed with his self-diagnosis of a broken nose, and that the defendants relied on her evaluation regarding his medical needs." *Id.* In light of the fact that the Court's cursory statute of limitations holding was based on the wording of a complaint that is not set out in the opinion, as well as the fact that the claim was alternatively dismissed on its merits, *Wells* cannot reasonably be said to stand for the broad proposition that the statute of limitations must always be timed from the date of the act that causes injury to the plaintiff. In fact, the opinion is completely ambiguous as to whether the dismissal on statute of limitations grounds was based on the fact that the act providing the basis of his injury– a punch in the nose from a fellow inmate–

9

occurred on December 17, 1997, or based on the fact that the plaintiff, on this date, became aware of the injury (a broken nose) which formed the basis of his failure to protect and inadequate medical care claims.

As stated above, the plaintiff's claim did not accrue until March 17, 2003; thus, the March 16, 2004 Complaint is timely. Because the court finds plaintiff's Eighth Amendment claim seasonable pursuant to the applicable one-year statute of limitations, it need not address plaintiff's tolling arguments.

**IV.** <u>**Causation**</u>

Proximate causation is an essential element of a § 1983 claim for damages. *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 661 (6th Cir. 1994) (citing *Doe v. Sullivan County, Tennessee*, 956 F.2d 545, 550 (6th Cir. 1992)); *Estate of Sowards v. City of Trenton*, No. 03-2036, 2005 WL 434577, at **8 (6th Cir. Feb. 24, 2005). "That is, a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Horn*, 22 F.3d at 661. Here, defendant argues that summary judgment on plaintiff's Eighth Amendment claim is proper because there are no issues of material fact as to whether the alleged deliberate indifference of Dr. Walker to plaintiff's serious medical need for a walking device proximately caused the development of a toxic bone infection in her foot.

"An injury is proximately caused by an act when it appears from the evidence in the case that the defendant's conduct was a substantial factor in bringing about the plaintiff's harm, and no rule of law relieves the defendant from liability because of the manner in which his conduct resulted in the harm." *Hickerson v. Koepp*, Nos.95-1890, 95-1982, 1997 WL 56961, at *3 (6th

10

Cir. Feb. 10, 1997). An action or inaction need not be the sole cause of an injury to constitute a proximate cause, as there can be more than one proximate cause of an injury. *Id*., 1997 WL at *4. The plaintiff bears the burden of proving, by a preponderance of the evidence, that the defendant's conduct was a proximate cause of the injury. *Id*., 1997 WL at *3 (citing *Glaser v. Thompson Medical Co., Inc*., 32 F.3d 969, 971 (6th Cir. 1994)). Common law, however, dictates that, unless the uncontroverted facts make the answer so clear that all reasonable persons must agree on the outcome, the question of proximate cause is generally one for the jury. *Kellner v. Budget Car & Truck Rental, Inc*., 359 F.3d 399, 406 (6th Cir. 2004) (citing Tennessee law); *Hunley v. DuPont Automotive*, 341 F.3d 491, 500 n.5 (6th Cir. 2003) (citing Michigan law).

The parties have submitted competing expert witness affidavits on the issues of deliberate indifference and causation. While defense expert Dr. Robert K. Johnston is of the opinion that "[a]ny withholding of Plaintiff's use of crutches did not cause Plaintiff to develop the infection that led to her hospitalization at Nashville General on March 17, 2003" (Docket No. 37), plaintiff's expert, Dr. David L. Thomas, has opined that "[t]he Plaintiff developed and suffered Osteomyelitis (infection of the bone) as a result of the Defendant's deliberate indifference" (Docket No. 47). Though Dr. Thomas's affidavit does not state specifically that the deprivation of a walking device was a substantial factor in bringing about the injury to the plaintiff, it does state that the defendant was deliberately indifferent in, among other things, ignoring the needs and necessary treatments of the plaintiff, and that such inaction caused the bone infection suffered by the plaintiff. As previously decided by the court, "[b]ecause Dr. Walker ordered Warrick to use crutches and/or a wheelchair on two separate occasions, a reasonable juror could conclude that Dr. Walker felt that crutches and/or a wheelchair were a necessary part of

11

Warrick's treatment." (Docket No. 22 p. 16)   Thus, one may reasonably presume that a necessary treatment or need to which Dr. Thomas refers in his affidavit is use of and access to a walking device.  The testimony of plaintiff's expert, therefore, raises a genuine issue of fact as to whether the defendant's deliberate indifference to Warrick's serious medical need for crutches and/or a wheelchair (a necessary part of Warrick's treatment) proximately caused the plaintiff's bone infection.

## V.    Conclusion

For these reasons, the Summary Judgment Motion of defendant Dr. Ramsey Walker will be denied.  An appropriate order will issue.

_____
ALETA A. TRAUGER
United States District Judge